IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

CEDRIC CALMES                                                                                           MOVANT

v.                                                                                          No. 1:12CR134-SA-DAS

UNITED STATES OF AMERICA                                                                      RESPONDENT

MEMORANDUM OPINION

This matter comes before the court on the motion [90] of Cedric Calmes to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The government has responded to the motion, and the matter is ripe for resolution. For the reasons set forth below, the instant motion to vacate, set aside, or correct sentence will be denied for want of substantive merit.

*Habeas Corpus Relief Under 28 U.S.C. § 2255*

The writ of *habeas corpus*, a challenge to the legal authority under which a person may be detained, is ancient. Duker, The English Origins of the Writ of Habeas Corpus: A Peculiar Path to Fame, 53 N.Y.U.L.Rev. 983 (1978); Glass, Historical Aspects of Habeas Corpus, 9 St. John's L.Rev. 55 (1934). It is "perhaps the most important writ known to the constitutional law of England," *Secretary of State for Home Affairs v. O'Brien*, A.C. 603, 609 (1923), and it is equally significant in the United States. Article I, § 9, of the Constitution ensures that the right of the writ of *habeas corpus* shall not be suspended, except when, in the case of rebellion or invasion, public safety may require it. *Habeas Corpus*, 20 Fed. Prac. & Proc. Deskbook § 56. Its use by the federal courts was authorized in Section 14 of the Judiciary Act of 1789. *Habeas corpus* principles developed over time in both English and American common law have since been codified:

> The statutory provisions on *habeas corpus* appear as sections 2241 to 2255 of the 1948 Judicial Code. The recodification of that year set out important procedural limitations and additional procedural changes

> were added in 1966. The scope of the writ, insofar as the statutory language is concerned, remained essentially the same, however, until 1996, when Congress enacted the Antiterrorism and Effective Death Penalty Act, placing severe restrictions on the issuance of the writ for state prisoners and setting out special, new *habeas corpus* procedures for capital cases. The changes made by the 1996 legislation are the end product of decades of debate about *habeas corpus*.

*Id*.

*Section 2255 Proceedings*

Section 28 U.S.C. § 2255 permits an inmate serving a sentence after conviction of a federal crime "to move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). As with the writ of *habeas corpus*, *see* 28 U.S.C. §§ 2241, 2254, a § 2255 motion sets forth only four bases on which a motion may be made: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Thus, a prisoner must claim either a constitutional violation or want of subject matter jurisdiction to invoke 28 U.S.C. § 2255. In the absence of constitutional or jurisdictional defects, a federal prisoner may invoke § 2255 only if the error constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio,* 442 U.S. 178, 185 (1979).

The district court must first conduct a preliminary review of a § 2255 motion, and "[i]f it plainly appears from the motion, any attached exhibits, and the record of the prior proceeding that the moving party is not entitled to relief, the judge must dismiss the motion." Rules Governing Section 2255 Proceedings, Rule 4(b). If the motion raises a non-frivolous claim to relief, the court must order the Government to file a response or to take other appropriate action. *Id.* The judge may then require the

parties to expand the record as necessary and, if good cause is shown, authorize limited discovery. *Rules Governing Section 2255 Proceedings,* Rules 6–7.

After reviewing the government's answer, any transcripts and records of prior proceedings, and any supplementary materials submitted by the parties, the court must decide whether an evidentiary hearing is warranted. *Rules Governing Section 2255 Proceedings,* Rule 8. Under the statute, an evidentiary hearing must be held unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). However, the court need not hold an evidentiary hearing if the prisoner fails to produce "independent indicia of the likely merit of [his] allegations." *United States v. Edwards,* 442 F.3d 258, 264 (5th Cir. 2006) (quoting *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir. 1998)).

Ultimately, the petitioner bears the burden of establishing his claims of error by a preponderance of the evidence. *See Wright v. United States,* 624 F.2d 557, 558 (5th Cir. 1980). For certain "structural" errors, relief follows automatically once the error is proved. *See Burgess v. Dretke,* 350 F.3d 461, 472 (5th Cir. 2003). For other errors at the trial court level, the court may grant relief only if the error "had substantial and injurious effect or influence" in determining the outcome of the case. *Brecht v. Abrahmson,* 507 U.S. 619, 637 (1993); *see also United States v. Chavez,* 193 F.3d 375, 379 (5th Cir. 1999) (applying *Brecht's* harmless error standard in a § 2255 proceeding). If the court finds that the prisoner is entitled to relief, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

*Facts and Procedural Posture*

On October 25, 2012, a federal grand jury returned a four-count indictment against Calmes charging him with: (1) one count of possession with intent to distribute twenty-eight grams or more of a mixture and substance containing cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); (2) one count of possession with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D); (3) one count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1); and (4) one count of knowingly possessing a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). (Doc. 1).

Calmes' convictions arise from evidence seized during a search warrant executed on March 15, 2011. (PSR pg. 6). The search warrant was executed on 116 Dan Buddy Road in Lowndes County, Mississippi. (PSR pg. 6). In Calmes' bedroom, agents located $504.00, cocaine, cocaine base, marijuana, and a Smith and Wesson, Model 457S, .45 caliber pistol. (PSR pg. 7). On August 12, 2013, Calmes filed a motion to suppress evidence from the search conducted on his residence. (Doc. 28). The marijuana equivalent of the narcotics involved was 643 kilograms. (PSR pg. 10).

According to the transcript of the suppression hearing, agents relied upon a confidential informant to obtain the affidavit for the search warrant. (Doc. 43). During the suppression hearing, the court stated, "The Court is satisfied that when [CI] was able to further provide information after the arrest of Andrew Owens by escorting – or being escorted by the officers to the residence, that even though [CI] did not know the address, [CI] was able to relate to the officers the location by highway and roads. [CI] was able to accurately describe the residence." (Doc. 43 pg. 72). "All these tips that [CI] had provided appear to be corroborated as they played out in the second search

4

warrant with her being able to describe the location, take the officers to the location." (Doc. 43 pg. 73).

The court denied the motion to suppress. (Doc. 35). On February 21, 2014, Calmes filed a second motion to suppress (Doc. 48). The second motion was also denied. (Doc. 49). On February 21, 2014, counsel filed a "Motion to Disclose Identity of Informants." (Doc. 45). Counsel also filed a Motion to Produce Search Warrant and Other Supporting Affidavit for *Franks* hearing to challenge the truthfulness of the statements given by the Agent Williams in support of the warrant used to search the house of Adam Owens. (Doc. 46). Evidence seized and information gleaned during the search of Owens' home was used to obtain a search warrant for defendant Calmes' home. The pre-trial motions were denied. (Doc. 85).

Following a jury trial, Calmes was convicted of Counts One through Four of the indictment and sentenced to 180 months. (Doc. 70, 78). He filed a Notice of Appeal on August 20, 2014. (Doc. 79). The Fifth Circuit affirmed the conviction, stating that the agent did not intentionally or recklessly make misstatements or omissions in the affidavit for search warrant; the District Court did not error in determining the good faith exception was applicable; and Calmes waived the issue whether the district court abused its discretion in denying his motion to disclose the CI's identity. *United States v. Calmes*, 608 Fed. App'x. 307, 309 (5th Cir. 2015)(unpublished).

Mr. Calmes then filed the instant motion to vacate his sentence under 28 U.S.C. § 2255, in which he presents the following seven claims for relief:

> (1) His conviction is invalid because the residual clause of 18 U.S.C. § 924(c)(3)(B) is unconstitutionally vague;

5

(2) His conviction is invalid because he was charged with two offenses under § 924(c), and it is unclear upon which offense the jury based the conviction;

(3) Counsel was ineffective for failing to subpoena the confidential informant in his case to support a motion to suppress evidence;

(4) Counsel was ineffective for failing to subpoena the confidential informant to trial, thus depriving Mr. Calmes of his right to confront the witnesses against him;

(5) Counsel was ineffective for failing to request a jury instruction on accomplice or informant testimony regarding witness Adam Owens;

(6) Counsel was ineffective for failing to secure the testimony of Antonio Brooks that the alleged confidential informant did not exist; and

(7) Counsel was ineffective for failing to seek dismissal of the charges for lack of sufficiency of the evidence to support the conviction.[1]

Doc. 90.

*Discussion*

As discussed below, none of the Movant's claims has merit, and the instant motion to vacate, set aside, or correct sentence will be denied.

*Ground One: Invalidity of the Residual Clause of 18 U.S.C. § 924(c)(3)(B)*

In *United States v. Davis*, the Supreme Court determined that the residual clause in 18 U.S.C. Section 924(c)(3)(B) (regarding the definition of a crime of violence) is unconstitutionally vague. Calmes was convicted by a jury of violating 18 U.S.C. Section 924(c)(1), Possession of a Firearm in

---

[1] The government did not brief issues 5, 6, or 7 in its response to the instant Motion to Vacate.

Relation to a Drug Trafficking Crime. (Doc. 78). The Supreme Court in *Davis* concluded that the "crime of violence" definition in the residual clause of § 924(c)(3)(B) is unconstitutional. However, Mr. Calmes was not convicted under § 924(c)(3)(B); instead he was convicted for possession of a firearm in furtherance of a drug trafficking crime under 18 U.S.C. § 924(c)(1). Therefore, Calmes' conviction was not overturned by *Davis*, and this ground for relief is without substantive merit.

*Ground Two: The Government (Allegedly) Charged Calmes with Two Separate Offenses under 18 U.S.C. § 924(c)*

Mr. Calmes faced four charges in his criminal case: (1) possession with intent to distribute twenty-eight grams or more of a mixture and substance containing cocaine base under 21 U.S.C. § 841(a)(1) and (b)(1)(B); (2) possession with intent to distribute marijuana under 21 U.S.C. § 841(a)(1) and (b)(1)(D); (3) felon in possession of a firearm under 18 U.S.C. § 922(g)(1) and 924(a)(2); and (4) one count of knowingly possessing a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). (Doc. 1). The jury returned a verdict finding him guilty on all counts of the indictment including the single count under 18 U.S.C. Section 924(c)(1). (Doc. 70). Calmes was not charged with two separate counts under 924(c); as such, this ground for relief is likewise without substantive merit.

*Ineffective Assistance of Counsel*

Mr. Calmes frames his remaining five grounds for relief in terms of ineffective assistance of counsel. The court must address such claims under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prove that defense counsel was ineffective, the petitioner must show that counsel's performance was deficient – and that the deficiency resulted in prejudice to his defense. Under the deficiency prong of the test, the petitioner must show

that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. The court must analyze counsel's actions based upon the circumstances at the time – and must not use the crystal clarity of hindsight. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988). The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). To prove prejudice, the petitioner must demonstrate that the result of the proceedings would have been different or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995), *cert. denied*, 116 S.Ct. 557 (1995); *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *Sharp v. Johnson*, 107 F.3d 282, 286 n.9 (5th Cir. 1997).

*Grounds Three and Four: Counsel's Failure to Subpoena the Confidential Informant*

Calmes challenged the court's denial of his motion to suppress evidence, his motion to disclose the identity of the confidential informant, and his requests for issuance of a subpoena duces tecum and a writ ad testificandum to the confidential informant in the Fifth Circuit Court of Appeals. *Calmes*, 608 F. App'x at 308. The Court of Appeals held: "Calmes has not shown that Agent Williams intentionally or recklessly made misstatements or omissions in his affidavit regarding a 911 call or the CI's criminal history." *Calmes*, 608 F. App'x at 308–09. "In addition, Williams's affidavit is not bare bones or conclusional." *Id.* at 309. The Fifth Circuit then upheld this court's ruling on the motions to suppress and related motions.

To meet the first prong of the *Strickland* standard, Calmes must show that counsel's representation fell beneath an objective standard of reasonableness which denied him effective

8

assistance of counsel as required by the Sixth Amendment. *United States v. Haese*, 162 F.3d 359, 364 (5th Cir. 1998). Calmes argues, "Counsel never investigated whether there was an informant identified." (Calmes' Petition). On February 21, 2014, counsel filed a Motion to Disclose Identity of Informants. (Doc. 45). Counsel argued, "It would be an error of constitutional dimension to deny disclosure of an informant's identity where such disclosure would be highly relevant and might have been helpful to the defense." *Id.* Counsel further argued, "Such disclosure is constitutionally compelled." *Id.* Indeed, contrary to Calmes' assertions in the instant motion, trial counsel made several efforts to discover the identity of the Confidential Informant. The court, however, rejected counsel's arguments.

In its response to these efforts, the government argued, "There is nothing in the record… that established that the confidential informant was a participant, an eyewitness, or a person who was otherwise in a position to give direct testimony concerning the crime." (Doc. 52). The court agreed with the Government and denied requests by defense counsel to reveal the informant's identity.

Following the jury trial, Calmes appealed his convictions to the Fifth Circuit and requested a *Franks* hearing to challenge the truthfulness of the Agent's statements in the search warrant covering witness Adam Owens' home.[2] The Court of Appeals held, "To obtain a *Franks* hearing, Calmes was required to make a "substantial preliminary showing" that (1) the affiant knowingly and intentionally, or with reckless disregard for the truth, made a false statement in the warrant affidavit; and (2) the

---

[2] The court notes that the search of Mr. Owens' home did not yield any evidence used to obtain Mr. Calmes' conviction.

remaining portion of the affidavit is insufficient to support a finding of probable cause." *Calmes*, 608 F. App'x at 308. The court held, "Calmes has not shown that Agent Williams intentionally or recklessly made misstatements or omissions in his affidavit regarding a 911 call or the CI's criminal history." *Calmes*, 608 F. App'x at 308–09. The court also stated, "To the extent that Calmes argues that the District Court abused its discretion in not requiring the Government to disclose the identity of the CI, he does not address the three-factor test used to determine whether the identity of an informant should be revealed." *Calmes*, 608 F. App'x at 309. The Court of Appeals ultimately held that Calmes waived the issue. *Id*.

*Strickland* holds that, to prove ineffective assistance of counsel, Mr. Calmes must show that trial counsel's performance was deficient. Counsel filed several motions attempting to determine the identity of the Confidential Informant. (Doc. 85 pg. 88-89). The court denied each of these attempts because the Confidential Informant was neither a participant in the crime nor a testimonial witness regarding the crime. The agent had used the Confidential Informant on fifty-plus occasions and determined her to be both credible and reliable. (Doc. 43 pg. 70).

Calmes alleges that his counsel was ineffective for failing to subpoena the informant. (Calmes' Motion to Vacate). However, the identity of the informant was not revealed to Calmes' counsel, who thus had no means to subpoena the informant. This ground for relief is without substantive merit.

The second prong of the *Strickland* standard requires Calmes to demonstrate a reasonable probability exists that, but for trial counsel's deficient representation, the result of his trial would have been different. *Haese*, 162 F.3d at 364. Trial counsel attempted to uncover the identity of the

confidential informant on several occasions, but the court denied counsel's requests. (Doc. 45, 46). As the Court of Appeals held, Calmes did not "address the three-factor test used to determine whether the identity of an informant should be revealed." *Calmes*, 608 F. App'x at 309. On March 15, 2011, a search warrant was executed on 116 Dan Buddy Road in Lowndes County, MS. (PSR pg. 6). At that time, agents located cocaine, cocaine base, marijuana and a Smith and Wesson, Model 457S, .45 caliber pistol. (PSR pg. 7). Ultimately, Calmes was convicted in a trial by jury of each Count in the Indictment. (Doc. 70).

*Ground Five: Counsel Was Ineffective for Failing to Obtain a Jury Instruction on Accomplice or Informant Testimony Regarding Witness Adam Owens.*

Contrary to the Movant's claim, the court, indeed, gave an instruction on informant testimony:

> The testimony of an alleged accomplice, and/or the testimony of one who provides evidence against a defendant as an informer for pay, for immunity from punishment, or for personal advantage or vindication, must always be examined and weighed by the jury with greater care and caution than the testimony of ordinary witnesses. You, the jury, must decide whether the witness's testimony has been affected by these circumstances, by the witness's interest in the outcome of the case, by prejudice against the defendant, or by the benefits that the witness has received either financially or as a result of being immunized from prosecution. You should keep in mind that such testimony is always to be received with caution and weighed with great care.
>
> You should never convict any defendant upon the unsupported testimony of such a witness unless you believe that testimony beyond a reasonable doubt.

Doc. 69 at 20 (Jury Instructions given at trial). As counsel actually obtained such a jury instruction, this claim is without substantive merit and must be denied.

11

*Ground Six: Counsel Was Ineffective for Failing to Secure the Testimony of
Antonio Brooks That the Alleged Confidential Informant Did Not Exist.*

This ground for relief is one step removed from Calmes' challenge to the government's use of an unnamed confidential informant to obtain probable cause to search Mr. Calmes' home. *Habeas corpus* claims of uncalled witnesses are disfavored based upon their speculative nature:

> Complaints of uncalled witnesses are not favored in federal *habeas corpus* review because allegations of what a witness would have testified are largely speculative. Where the only evidence of a missing witnesses' testimony is from the defendant, this Court views claims of ineffective assistance with great caution.

*Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986) (internal citations omitted); *Marler v. Blackburn,* 777 F.2d 1007, 1010 (5th Cir. 1985); *Sayre v. Anderson,* 238 F.3d 631, 635-636 (5th Cir. 2001). Mr. Calmes has provided only his statement (attached to the instant motion to vacate sentence) regarding what Mr. Brooks' testimony might have been. Courts are also reluctant to grant *habeas corpus* relief based upon uncalled witnesses "because the presentation of testimonial evidence is a matter of trial strategy . . . ." *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978).

Mr. Calmes argues that Antonio Brooks, a "jail-house snitch," would have testified that while he and prosecution witness Adam Owens were incarcerated in the same jail, Owens told him that there was no confidential informant – and that he could get his sentence reduced if he lied about such an informant for the government. Doc. 91 at 13-14 , Memorandum in Support of § 2255 Motion. Mr. Calmes appears to believe that the informant was Mr. Owens' girlfriend.[3] The government has not, however, revealed the identity of the confidential informant. Mr. Calmes argues that Owens and his

---

[3] The *ex parte in camera* testimony of Agent Williams, however, indicates that Mr. Owens' girlfriend was *not* the confidential informant.

girlfriend had recently fought – and believes that, after the fight, Owens was trying to patch things up with his girlfriend. Doc. 91 at 14. Mr. Calmes argues that, under these circumstances, Mr. Owens would not have risked his relationship with his girlfriend by "riding around with another woman" (a Confidential Informant):

> Thus, it is not logic[al] for a layman to be riding around with another woman who was the alleged informant if he was trying to get his girlfriend back or they were having problems[,] which is material to show this girl did not exist.

Doc. 91 at 14.

Mr. Calmes argues that the female confidential informant does not exist because Owens would not have risked his relationship with his girlfriend by riding around with the informant in his car. Mr. Calmes' assertion regarding the content of Mr. Brooks' testimony is unsupported, and his assertions regarding Mr. Owens' relationship with his girlfriend is rank speculation. However, Mr. Owens was not the only witness to testify regarding the Confidential Informant. Agent Williams provided detailed testimony *in camera* regarding the type of assistance the Confidential Informant provided in the instant case – and acknowledged her assistance in many other cases. Thus, two witnesses provided testimony to show that the Confidential Informant existed. Mr. Calmes has offered only double hearsay and conjecture to counter this testimony.

In any event, Mr. Brooks' proposed testimony would not have carried much weight. As he was a "jail house snitch," his testimony would have been subject to the same informant jury instruction the court gave regarding Adam Owens' testimony – an instruction warning that such testimony must be viewed and weighed with great caution. Given these facts – and the speculation regarding Mr. Owens'

13

girlfriend – the court will not second-guess defense counsel's decision to refrain from calling Mr. Brooks as a witness. This claim is without substantive merit and will be denied.

*Ground Seven: The Evidence Was Insufficient to Support the Verdict*

Mr. Calmes argues that counsel was ineffective for failing to challenge the sufficiency of the evidence against him to support the jury's guilty verdict. In order to obtain *habeas corpus* relief on a claim that the evidence presented was insufficient to sustain his conviction, Mr. Calmes must show that, after viewing evidence in the light most favorable to prosecution, no rational trier of fact would have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979), *Harris v. Blackburn*, 646 F.2d 904 (5th Cir. 1981). The standard for determining the distinction between "mere speculation and a reasoned inference" – and thus whether a jury's verdict is reasonable – is based upon federal law. *Coleman v. Johnson*, 566 U.S. 650, 132 S.Ct.2060 (2012). The *Jackson* test "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Santellan v. Cockrell*, 271 F.3d 190 (5th Cir. 2001), quoting *Herrera v. Collins,* 506 U.S. 390, 402, 113 S.Ct. 853, 861, 122 L.Ed.2d 203 (1993). To make this decision, after reviewing the proof presented in a light most favorable to the prosecution, the court must determine whether the jury was rational in concluding that there was no reasonable doubt as to the defendant's guilt.

When "faced with a record of historical facts that supports conflicting inferences[, a court] must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326, 90 S.Ct. at 2793. Those inferences *must*, however, be reasonable in light of the proof presented; the

factfinder must "draw *reasonable* inferences from basic facts to ultimate facts." *Id.,* at 319, 99 S.Ct. 2781 (emphasis added).

Mere speculation is never sufficient to establish proof beyond reasonable doubt; indeed speculation is not even sufficient to establish proof by a preponderance of the evidence. *Galloway v. United States*, 319 U.S. 372, 63 S.Ct. 1077 (1943). "[T]he essential requirement [for competent proof] is that mere speculation be not allowed to do duty for probative facts, after making due allowance for all reasonably possible inferences favoring the party whose case is attacked." *Id.* at 395.

The evidence supporting Mr. Calmes' conviction was substantial. A confidential informant told police that she had accompanied another drug dealer to Mr. Calmes' residence, and the other drug dealer had purchased approximately five ounces of crack cocaine from someone in the residence. Doc. 86 at 17. The officers obtained a warrant to search the home based upon the informant's statement. *Id.* That was the extent of the confidential informant's involvement in Mr. Calmes' case.

During execution of the search warrant of Mr. Calmes' home, officers found "amounts of crack cocaine sitting on top of a bed in the bedroom and also bags of marijuana sitting on the coffee table." Doc. 85 at 53. The government introduced numerous photographs taken during the search, including pictures of the drugs found in the home, as well as cash and a firearm. Doc. 85 at 55-90. Officers found a grocery bag of marijuana and crack cocaine on Mr. Calmes' bed – and a .45 pistol and more cocaine in his dresser drawer. Doc. 85 at 61-75. The firearm was located within three feet of the marijuana, crack cocaine, and $504 in currency in Mr. Calmes' bedroom. Doc. 85 at 80. Officers recovered $4,000 in cash from Mr. Calmes' person at the time of his arrest. Doc. 86 at 20. Officers also recovered a large

quantity of marijuana in another bedroom in the trailer – and more in the freezer in the kitchen. Doc. 85 at 81-82. Some of the drugs were placed into small Ziploc bags. Doc. 85 at 83-84.

The officers also recovered small amounts of the drug Ecstasy, digital scales, and other items related to the use and sale of drugs from the trailer. Doc. 85 at 55-90. The firearm, cash, and most of the crack cocaine were recovered from Mr. Calmes' room. Doc. 85 at 80. Officers seized a total of $9,743 in cash from the residence. Mr. Calmes was a convicted felon at the time the officers seized the firearm from his room, a few feet from both illegal drugs and cash.

Witness Adam Owens, who had been separately convicted for drug crimes, gave testimony showing that Mr. Calmes made a living as a drug dealer for nine or ten months prior to Owens' arrest. *See, generally,* Doc. 86 at 63-131. Owens testified regarding the ways Calmes conducted his drug business – and specifically that he accepted only cash. *Id.* Mr. Owens testified that he had frequently bought crack cocaine and marijuana from Calmes at his home (the trailer that law enforcement had searched and the location of his arrest). Doc. 86 at 65. Owens said that he had bought three ounces of crack cocaine from Calmes – in his room at his trailer – in the days prior to March 15, 2011, shortly before Owens was arrested. Doc. 86 at 67-68. An infant was in the room at the time of the drug sale. Doc. 86 at 77. Owens also saw a firearm in the room at the time of that sale, and the firearm was within easy reach for Mr. Calmes. *Id*. On a prior occasion, Calmes had "grabbed" the .45 handgun when Owens, who owed him drug money, had come by the trailer to pick up more drugs. Doc. 86 at 129-130. That encounter scared Owens and caused him to purchase his own firearm – to protect himself from Calmes. Doc. 86 at 130. Owens testified that he believed Calmes grabbed the gun to "scare me or let me know he wasn't' playing about his money …." Doc. 86 at 129-130. ATF Agent Elliot noted

the make, model, and serial number of the firearm recovered from Mr. Calmes' room. Doc. 86 at 141-142. It was manufactured in Springfield, Massachusetts; as such, it traveled in interstate commerce to arrive in Mississippi, where it was recovered. *Id.*

The jury found Mr. Calmes guilty of four offenses:

> (1) Possession of 28 grams or more of crack cocaine with intent to distribute under 21 U.S.C. § 841(a)(1) and (b)(1)(B);
>
> (2) Possession of marijuana with intent to distribute under 21 U.S.C. § 841(a)(1) and (b)(1)(D);
>
> (3) Knowing possession by a convicted felon of a firearm in and affecting interstate commerce under 18 U.S.C. § 922(g)(1) and 924(a)(2); and
>
> (4) Knowing possession of a firearm during and in relation to and in furtherance of a federal drug trafficking crime (possession of crack cocaine with the intent to distribute as set forth in Count 1) under 18 U.S.C. § 924(c)(1).

Doc. 1, Indictment.

The evidence summarized above easily meets the elements of the four crimes for which Mr. Calmes was convicted. As to Counts 1 and 2, large amounts of crack cocaine (more than 28 grams) and marijuana were recovered from Calmes' residence (mostly from his room). Some was separated into small Ziploc bags, a common practice for selling illegal drugs. Digital scales, which are often used to weigh out illegal drugs for sale, were recovered from the residence. Various drug paraphernalia, as well as cash and a firearm were also recovered from Calmes' trailer. Indeed, Adam Owens testified that he bought large amounts of crack cocaine (about ten ounces per month) from Calmes from his residence over a period of nine or ten months – approximately 90 ounces (over 2,500 grams). The evidence and testimony introduced at trial support Calmes' convictions in Counts 1 and 2 for possession of marijuana with intent to distribute and possession of more than 28 grams of crack cocaine with intent to distribute.

Regarding Counts 3 and 4, law enforcement officers recovered a .45 semiautomatic handgun from Calmes' room, easily within reach from his bed – and in close proximity to the drugs recovered there. Witness Adam Owens testified that he saw that firearm when he had purchased crack cocaine from Calmes in that very room a few days before his arrest. On a prior occasion, Calmes had intimidated Owens, who owed him drug money, by grabbing the handgun in a threatening manner in his presence during a drug transaction. That encounter caused Owens to purchase his own firearm for protection from Calmes. It is undisputed that Mr. Calmes was a convicted felon during the relevant period. These facts support his convictions for possession of a firearm by a convicted felon (during the time of his arrest) and possession by a convicted felon of a firearm during and in relation to a federal drug trafficking crime (when Calmes threatened Owens with the firearm on a previous occasion).

Viewed in the light most favorable to the prosecution, a reasonable juror could find that the proof the Government adduced at trial satisfied all elements of the four offenses for which Mr. Calmes was convicted. Counsel provided effective assistance in deciding not to raise this issue, and this ground for relief is also without substantive merit and must be denied.

*Conclusion*

In sum, none of the Movant's grounds for relief has merit, and the instant motion to vacate, set aside, or correct sentence will be denied. A final judgment consistent with this memorandum opinion will issue today.

SO ORDERED, this the 11th day of March, 2020.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE